WETHERELL, J.
Appellant, Henry Spencer, appeals the final order of the Agency for Persons with Disabilities (APD) assigning him to Tier Three of the home and community-based services Medicaid waiver program for persons with developmental disabilities (hereafter “the DD Waiver Program”). Finding no error in this assignment, we affirm the final order.
Spencer is a developmentally disabled adult with a primary diagnosis of mental retardation. He resides in a group home and receives services under the DD Waiver Program pursuant to a cost plan approved by APD. The services reflected on his 2010-11 cost plan, which is the most recent plan in the record, are standard residential habilitation at the minimal level ($27,443.52), adult day training at a 1.6 to one ratio ($6,681.60), transportation ($8,788.80), waiver support coordination ($1,571.40), and adult dental services *1251 ($500). The total cost of these services is $44,985.32.
In April 2010, APD notified Spencer that he was being assigned to Tier Three of the DD Waiver Program, which at the time, had a $35,000 annual expenditure limit.[1] Spencer timely requested a hearing to challenge his assignment to Tier Three and, in his petition, he argued that he should be assigned to Tier One, which at the time had no expenditure limit, so he could continue receiving all of the services on his cost plan. The case did not go to hearing until March 2011.[2]
The evidence presented at the hearing established that Spencer did not have exceptional behavioral problems or intense medical needs. Indeed, the statutorily-mandated assessment tool used by APD to evaluate Spencer’s needs indicated that he had moderate adaptive needs and low medical needs. There was testimony that it would be detrimental to Spencer if he lost his group home placement or if his adult day training was completely eliminated; however, there was also testimony that, even with the expenditure limit in Tier Three, Spencer would be able to stay in his group home and attend adult day training twice a week.
The hearing officer found in her recommended order that Spencer did not meet the criteria for assignment to Tier One because he did not have any exceptional behavioral problems and because his medical and adaptive needs could be met in Tier Three. Significantly, the hearing officer did not find that Spencer had intensive medical and adaptive needs. APD adopted the hearing officer’s recommended order in its final order, and this timely appeal followed.
Spencer contends that APD’s determination that his needs can be met in Tier Three is based on an erroneous interpretation of Florida Administrative Code Rule 65G-4.0027(4).[3] This court considered a similar argument in Newsome v. Agency for Persons with Disabilities, 76 So.3d 972 (Fla. 1st DCA 2011).
In Newsome, APD determined that the appellant’s needs could be met in Tier Three because the expenditure limit for that tier was sufficient to cover the costs of the Personal Care Assistance and Waiver Support Coordination services reflected on the appellant’s cost plan. Id. at 974. In making this determination, APD did not consider the costs of any of the other services on the appellant’s cost plan because none of those services were listed in rule 65G-4.0027(4). Id. This court reversed, holding that APD erred in considering only the services listed in rule 65G-4.0027(4) when making a tier assignment because “[t]he rule states that the listed services are to be used as the ‘primary basis’ for the tier assignment; it does not state that the listed services are the only services to be considered.” Id. at 975.
Newsome is not controlling here because, unlike Newsome where the parties *1252 stipulated and the hearing officer found that the appellant had “intense medical needs,” the hearing officer in this case did not find that Spencer had intensive medical or adaptive needs and the record establishes that Spencer’s medical and adaptive needs are low to moderate. Thus, Spencer does not meet the threshold requirement for Tier One, which is “limited to clients who have service needs ... for intensive medical or adaptive needs and that are essential for avoiding institutionalization ....” § 393.0661(3)(a), Fla. Stat. (2010); see also Fla. Admin. Code R. 65G-4.0027(l)(a) (explaining that Tier One is limited to clients whose “needs for medical or adaptive services are intense ... and are essential for avoiding institutionalization”). Because Spencer does not meet the threshold eligibility requirement for Tier One, it is not necessary to consider, as it was in Newsome, whether APD correctly determined that his needs can be met in a lower tier.
We recognize, as did the hearing officer, that the expenditure limit that comes with the assignment to Tier Three will require Spencer to reduce or eliminate services on his cost plan. This result, while unfortunate, is a function of the policy choice made by the Legislature in creating the tier system to balance the delivery of services under the DD Waiver Program to eligible individuals with the availability of appropriated funds.[4] It is not the role of this court to second-guess this policy choice.
Accordingly, for the reasons stated above, we affirm the final order assigning Spencer to Tier Three of the DD Waiver Program.
AFFIRMED.
ROBERTS and ROWE, JJ., concur.

. The expenditure limit was subsequently reduced to $34,125. See § 393.0661(3)(c), Fla. Stat. (2011).

. The length of time between the petition and the hearing was attributable, at least in part, to the fact that the case was initially referred to the Division of Administrative Hearings and then transferred to a hearing officer with the Department of Children and Families (DCF) after section 393.125(1), Florida Statutes, was amended to require hearings in cases such as this to be conducted by DCF hearing officers pursuant to section 409.285, Florida Statutes. See ch.2010-157, Laws of Fla., at § 3 (effective July 1, 2010).

.Spencer also contends that the determination is not supported by competent substantial evidence. We reject this argument without further comment.

. The rationale for the tier system was explained in the hearing officer's recommended order, as follows: "Although tier caps frequently result in the need for individual Waiver recipients to reduce or eliminate previously authorized services, such cost[] reductions allow APD to provide services to other clients, while maintaining the Agency’s overall appropriations.”