MARSTILLER, J.
Brian Michael Faille is the guardian advocate/representative for his son Brison who suffers mental retardation and a seizure disorder. Brison is a client of the Agency for Persons With Disabilities (“Agency”) through which he receives services under the Home and Community-Based (“HCB”) Services Medicaid Waiver Program. Mr. Faille challenges an Agency order assigning Brison to Tier Three of the program instead of Tier One. Finding no error in the tier assignment, we affirm the order.
Section 393.0661(3), Florida Statutes (2009), creates a four-tiered structure for the HCB waiver program based on the nature and extent of an individual’s disabilities and service needs. Each tier has an annual expenditure limit, and the statute directs the Agency to assign clients to one of the four tiers based on specified cost guidelines, reliable assessment instruments, and client characteristics.
In May 2010, the Agency notified Mr. Faille of Brison’s assignment to Tier Three. At the time, Tier One had no expenditure limit, while the limit for Tier Three was $35,000. See §§ 393.0661(3)(a), (c), Fla. Stat. (2009). The annual limits are now $150,000 and $34,125, respectively. See §§ 393.0661(3)(a), (c), Fla. Stat. (2010). Appellant challenged the assignment, arguing that his son qualified for placement in Tier One.[1] The Tier One Waiver is limited to clients whose intensive medical and adaptive service needs are essential for avoiding institutionalization and cannot be met in the lower tiers, and clients with exceptional behavioral problems who present a substantial risk of harm to themselves or others. See § 393.0661(3)(a), Fla. Stat. (2009); Fla. Admin. Code R. 65G-4.0027(1). This universe of clients includes those who receive 180 hours or more of intensive personal care assistance (“PCA”) per month. See Fla. Admin. Code R. 65G-4.0027(2)(a).
The approved services in Brison’s cost plan for the period July 1, 2009, through June 30, 2010, included PCA, respite care, companion services, behavior assessment, behavioral therapy, dental services, and waiver support coordination services. The total annual cost of these services was $26,240.77. By December 2010, when Mr. Faille’s administrative challenge went to hearing, Brison’s cost plan no longer included the behavioral services. Further, the State Medicaid Plan no longer supple *181 mented the cost of Brison’s PCA services.[2] Consequently, his cost plan for the period July 1, 2010, through June 30, 2011, reflected an increase in the cost of PCA from $4,765.88 to $31,762.50; total cost for the 2010-11 plan was $62,983.30. The Agency approved Brison for 8,470 quarter-hours per year, or 176.46[3] hours per month, of PCA. In July 2010, the Agency’s Area 3 office had conducted a “Tier Assignment Reconsideration Meeting” to address an increase in PCA. The outcome of the meeting was a recommendation from the Agency personnel present that Brison be placed in Tier One because he was authorized to receive PCA “at the intensive level” and because of “the severity of his behavioral needs.” However, the person or persons at the Agency responsible for making final tier assignment decisions rejected the recommendation.
Following the evidentiary hearing, the hearing officer submitted to the Agency a recommended order including the following findings and conclusions. First, the hearing officer concluded that Brison’s initial placement into Tier Three was appropriate because the total cost of the services in his 2009-10 cost plan was lower than the Tier Three expenditure limit. Second, the hearing officer considered whether the service and cost changes for 2010-11 justified Brison’s placement in Tier One. She found that although Brison has behavioral problems and presents a risk of harm to others to some degree, no type of behavioral service is currently authorized. Thus, she could not conclude that Brison has behavioral problems so exceptional in intensity, duration, or frequency to make him eligible for Tier One placement under rule 65G-4.0027(l)(b). In addition, Brison is not approved to receive 180 hours or more of PCA as required by rule 65G-4.0027(2)(a) for Tier One assignment, and his PCA services are not “intensive” as also required by the rule. Noting that Brison may later need a higher level of PCA to avoid institutionalization, the hearing officer concluded Brison’s current need for such services can be met within the expenditure limit for Tier Three. The Agency entered a final order adopting the hearing officer’s recommendation that Bri-son remain assigned to Tier Three.
Mr. Faille does not challenge the eviden-tiary basis for the order, but argues that our decision in Newsome v. Agency for Persons With Disabilities, 76 So.3d 972 (Fla. 1st DCA 2011), requires the Agency to place Brison in Tier One. We disagree that Newsome is controlling here.
In Newsome, we reversed a Tier Three assignment, finding that the Agency incorrectly interpreted rule 65G-4.0027(4) as limiting consideration of approved services in a client’s cost plan to only those specified in the rule. There, the appellant’s cost plan included PCA, adult day training, transportation, consumable medical supplies, durable medical equipment, adult dental care, respite care, and waiver support coordination, at a total cost of approximately $72,000. See Newsome, 76 So.3d at 974. In determining that the appellant’s needs could be met in Tier Three, the Agency considered only the cost of her PCA and waiver support coordination. Id. Finding this to be error, we reasoned:
[Rule 65G-4.0027(4) ] states that the listed services are to be used as the “primary basis” for tier assignment; it does not state that the listed services are the *182 only services to be considered.... [T]he Agency’s narrow interpretation of this rule is inconsistent with the proposition stated in rule 65G-4.0026(l)(c) that “[t]he services authorized in an approved cost plan shall be key indicators of a tier assignment because they directly reflect the level of medical, adaptive, or behavioral needs of a client.”
Id. at 975. We concluded that at least one other service in the appellant’s cost plan— consumable medical supplies — was directly related to her intensive medical needs, and that had the Agency correctly considered it, the appellant’s needs would have exceeded the Tier Three expenditure limit. Id.
Newsome is distinguishable from the instant case, however. The rule at issue in that case — rule 65(3-4.0027(4) — applies only to “[c]lients who meet the [Tier One] criteria in subsection(l)[.]” The appellant in Newsome had intense medical or adaptive needs and met the criterion in rule 65G-4.0027(l)(a); thus, she was eligible for placement in Tier One. Brison, on the other hand, does not satisfy the medical, adaptive, or behavioral needs criteria in rule 65G-4.0027 (l)(a) and (l)(b). Neither does he satisfy the intensive PCA need criterion in subsection (2)(a). Consequently, he does not meet the threshold requirements for Tier One, and “it is not necessary to consider, as it was in New-some, whether his needs can be met in a lower tier.” Spencer v. Agency for Persons With Disabilities, 86 So.3d 1250, 1252 (Fla. 1st DCA 2012).
The evidence presented to the hearing officer established that Brison’s adaptive needs, for which the Agency has approved 176.45 hours of PCA at a cost of $31,762.50, can be met within the Tier Three spending cap. Accordingly, we affirm the order assigning him to Tier Three.
AFFIRMED.
PADOVANO and ROWE, JJ., concur.

. Brison did not meet the Tier Two residential habilitation requirement or the Tier Four $14,792 expenditure limit. See §§ 393.0661 (3)(b), (d), Fla. Stat. (2009).

. See Fla. Admin. Code R. 65G-4.0026(4) ("For all Tiers the client must utilize State Plan Medicaid services ... that duplicate the waiver services proposed for the client.”).

. 8,470 -*• 4 [quarter hours per hour] = 2,117.50 [annualized hours of PCA]; 2,117.50 12 [months] = 176.45 [hours of PCA per month]